UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00342-MOC

| | | |
|---|---|---|
| **EDWARD JUNIOR PATTERSON,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the court on petitioner's Motion to Vacate his conviction under 28 U.S.C. § 2255 based on prosecutorial misconduct and ineffective assistance of counsel. Both contentions are based on petitioner's belief that the reverse "stash house" sting, which led to the charges in this matter, constitute "outrageous government conduct." For the reasons that follow, because the government did not engage in outrageous conduct, there was no prosecutorial misconduct in bringing the charges which sprang therefrom and no ineffective assistance of counsel for failure to raise what would have been a meritless motion.

I.

Petitioner contends that the law enforcement conduct at issue here, to wit, a reverse sting known as a "stash house robbery," was either unlawful or so outrageous as to violate the Due Process protections afforded under the Fifth Amendment to the United States Constitution. Petitioner contends that in bringing such charges, the government has engaged in prosecutorial misconduct and that his trial counsel was ineffective in failing to raise that issue before he pled guilty.

1

II.

While first alluded to in Rochin v. California, 342 U.S. 165 (1952), the theory of "outrageous government conduct" has its origins in United States v. Russell, 411 U.S. 423 (1973), the Supreme Court's seminal decision applying a subjective standard to the entrapment defense. In the majority opinion in Russell, then Associate Justice William H. Rehnquist, while affirming the subjective standard for entrapment, discussed the theoretical possibility of government conduct so outrageous as to bar resort to judicial process:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, *cf. Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the instant case is distinctly not of that breed.… The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment. *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960).

Id. at 431-32. Three years later, the Court and Justice Rehnquist backed away from development of a freestanding exclusionary rule for "outrageous government conduct," holding that defendants must show a specific violation of a constitutional right or Due Process. Hampton v. United States, 452 U.S. 484 (1976).

Post-Hampton, the law concerning dismissal for outrageous government conduct has developed circuit-by-circuit. While trial courts within the Ninth Circuit have recently found outrageous government conduct in so-called "stash house robbery stings" conducted by the ATF, see United States v. Roberts, 2:13CR 751 (C.D.Cal. May 30, 2014) and United States v. Hudson, 2014 WL 960860 (C.D.Cal. March 10, 2014),[1] the law remains clear in the Fourth Circuit that

---

[1] In finding outrageous government conduct in a similar stash house case, the district court there held, as follows:
> In these stash-house cases, the Government's "participation in the offense conduct" is what makes them particularly repugnant to the Constitution. Everything about the scheme—and therefore

2

"'outrageous conduct' doctrine survives in theory, but is highly circumscribed." United States v. Hasan, 718 F.3d 338, 343 (4th Cir. 2013). In the years between Hampton and Hasan, the Fourth Circuit has consistently held that a due process violation may only be found when the conduct at issue "is outrageous, not merely offensive." United States v. Goodwin, 854 F.2d 33, 37 (4th Cir. 1988). More recently, this court held that an almost identical stash house sting conducted by the government was lawful. See United States v. Thorne, 3:13cr293 (W.D.N.C. 2014).

While the trial courts in California clearly found arbitrariness in the scenarios created by the ATF, see Hudson, 2014 WL at 11, in this circuit the government conduct must "shock the conscience of the court." United States v. Osborne, 935 F.2d 32, 36 (4th Cir.1991). While the "touchstone of due process is protection of the individual against arbitrary action of the government," County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998), it is only "the most egregious official conduct" that will qualify as constitutionally arbitrary in the Fourth Circuit. Huggins v. Prince George's Cnty., Md., 683 F.3d 525, 535 (4th Cir.2012) (quoting Lewis, 523 U.S. at 846). In determining whether governmental conduct was arbitrary,

> [t]here are no mechanical tests for deciding when [government action] is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge ….

Ungar v. Sarafite, 376 U.S. 575, 589-590 (1964) (addressing arbitrariness in denying a continuance). The standard which must be applied *here* in determining whether government conduct is so outrageous as to offend Due Process is whether the conduct is "shocking" or "offensive to traditional notions of fundamental fairness." Osborne, 935 F.2d at 37.

---

> almost everything bearing upon a defendant's ultimate sentence—hinges solely on the Government's whim. Why were there not 10 kilograms in the stash house? Or 100? Or 1,000? Why were the guards allegedly armed—necessitating that Defendants bring weapons along with them? All of these factors came down to the ATF and the undercover agent alone. That sort of arbitrariness offends the Constitution's due-process demands.

*Hudson*, 2014 WL at 11.

Most recently, in <u>Hasan</u>, <u>supra</u>, the Fourth Circuit held that "[o]utrageous is not a label properly applied to conduct because it is a sting or reverse sting operation involving contraband." <u>Id.</u> at 344.[2] As observed by Honorable T. S. Ellis, United States District Judge, in the opinion underlying the appellate court's decision in <u>Hasan</u>,

> such due process violations are quite rare. Indeed, the Fourth Circuit has considered the issue on several occasions and has yet to reverse a single conviction or suppress evidence based on allegations of outrageous government conduct. And this is not surprising, for a due process violation such as the one alleged here can be found "only where the official [government] conduct is outrageous, not simply offensive."

<u>United States v. Hasan</u>, 846 F.Supp.2d 541, 545 (E.D.Va. 2012) (footnote and citation omitted). With that standard firmly in place, when and if outrageous government conduct is shown, the appropriate remedy would be dismissal prior to trial.

III.

Applying the Fourth Circuit standard to the facts presented in the factual basis presented at sentencing, contained in the Presentence Report, and accurately reflected in the government's Response herein, the conscience of the court is not shocked. Here, the PSR establishes that defendant has a history of violent criminal activity. The factual basis provides that the government provided him only with an opportunity to commit another violent criminal act, that he voluntarily took up that opportunity, and that he did not withdraw from such opportunity despite being provided multiple opportunities to do so. Petitioner was not provided the equipment to commit the acts or the co-conspirators: petitioner gathered those on his own.

---

[2] The Court of Appeals for the Fourth Circuit has also recently held, albeit in an unpublished decision, that there is a "high shock threshold" when a defendant makes a claim of outrageous government conduct. *United States v. Erwin*, 520 F. App'x 179, 180, 2013 WL 1800404, *1 (4th Cir. April 30, 2013).

4

The issue is not whether the government created an enticing scenario, but whether defendant willfully decided to participate in that scenario. In United States v. Jones, 18 F.3d 1145 (4th Cir. 1994), the Court of Appeals for the Fourth Circuit held:

> Just as it is not outrageous for law enforcement authorities proceeding in an undercover "buy" to attempt to bargain with a seller of narcotics into selling an amount which constitutes a crime for the sole purpose of obtaining a conviction, we find it not outrageous for the government to continue to purchase narcotics from willing sellers even after a level of narcotics relevant for sentencing purposes has been sold. We do not rest our decision upon a finding, as no doubt could be made, that the government had a legitimate purpose in continuing to conduct drug transactions with the appellants over an extended period of time, i.e., the hope of locating, apprehending and convicting Thompson. We decline to impose a rule that would require the government to come forward with a purpose or motivation, other than its responsibility to enforce the criminal laws of this country, as a justification for an extended investigation or for any particular step undertaken as part of an investigation. We also decline to adopt a similar rule that would require district courts to speculate as to the motives of, or to ascribe motives to, law enforcement authorities. Due process requires no such ruminations.

Id. at 1155 (citation and footnotes omitted). In any event, there is nothing in the factual basis that defendant was anything but a willing participant in the scenario conceived by the government and that defendant well knew what he was getting into when he agreed to rob the imaginary stash house.

***

There is nothing about the undercover operation that was either "outrageous" or "offensive to traditional notions of fundamental fairness" as would warrant Section 2255 relief. Goodwin, 854 F.2d at 37. The key inquiry is whether those targeted in any sting were predisposed to engage in criminal activity, whether their will was overcome by the government, and whether they voluntarily participated in all aspects of the scenario. Here, the factual basis indicates that petitioner was ready, willing, and able to commit the stash house robberies imagined by ATF. A due process violation occurs only when the government's conduct, viewed

5

in its totality, is so offensive that it "shocks the conscience." Having considered all the materials presented, the government action here does not offend Due Process as the conduct is neither "shocking" nor "offensive to traditional notions of fundamental fairness. Tus, petitioner's claim that the government engaged in prosecutorial misconduct and that trial counsel was ineffective in failing to raise such contention in a pretrial motion are without merit and will be dismissed.

IV.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court will issue a certificate of appealability. Rule 22 of the Federal Rules of Appellate Procedure requires "the district judge who rendered the judgment [to] . . . issue a certificate of appealability or state why a certificate should not issue." This Court must grant a certificate of appealability ("COA") if petitioner shows that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). To meet this standard, petitioner need not show that some jurists would grant his habeas petition as

> a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338. While the government's response casts some doubts on whether reasonable jurists could differ, doubts about whether to grant a COA must, in all fairness, be resolved in petitioner's favor. Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997); Porter v. Gramley, 112 F.3d 1308, 1312 (7th Cir. 1997). See also Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a

debatable claim of the denial of a constitutional right). Specifically, colleagues in the Ninth Circuit have reached different conclusions based on stash house robberies, which merits a certificate of appealability, which is granted in the event petitioner pursues an appeal from this Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that petitioner's Motion to Vacate, Correct or Set Aside Sentence (#1) is **DENIED** and this action is **DISMISSED** with prejudice. The Clerk of Court shall enter a Judgment consistent with this Order.

Signed: November 17, 2014

Max O. Cogburn Jr.
United States District Judge